(75 App. Div. 60.)

### KOSLOVKI v. INTERNATIONAL HEATER CO.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1902.)

1. NEGLIGENCE—KNOWLEDGE OF DANGER BY AGENT.

Plaintiff contracted to clean moldings for a manufacturer in a machine known as a "tumbler"; plaintiff doing the work, and the manufacturer furnishing the machine, and being obligated to keep the same in repair, and pay plaintiff a certain sum per hundredweight for the moldings cleaned. An employé of plaintiff had immediate charge of the work. While assisting in the work, a piece of the tumbler fell on plaintiff, injuring him. There was evidence that the thread had become worn from the bolt fastening the piece to the machine, and it appeared that several times each day it was the duty of plaintiff's employé to fasten the piece to the machine by the bolt. Held, that plaintiff was chargeable with any knowledge of the employé as to the condition of the bolt.

2. SAME—EVIDENCE.

According to defendant's evidence, the employé had an opportunity to supply the bolts, when worn, with new ones; and, according to plaintiff, he had been accustomed to supply bolts when worn; and there was evidence that the employé had complained of insufficient bolts. Held to show knowledge on the part of plaintiff's employé that the bolts were dangerous.

Appeal from trial term, Oneida county.

Action by Theodore Koslovki against the International Heater Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

P. C. J. De Angelis, for appellant.
Josiah Perry, for respondent.

HISCOCK, J. This action was brought to recover damages claimed to have resulted from the negligence of the defendant in furnishing for the use of plaintiff a machine with a defective bolt, which permitted a heavy piece of the machine to drop upon his foot. Accepting the theory adopted by the jury,—that the accident did happen in the manner and from the cause claimed,—we still think that plaintiff is to be so charged with having had knowledge through his agent, of the defect complained of, and of having assumed the risks incidental thereto, that he cannot recover, and that the judgment and order appealed from should therefore be reversed.

The accident happened October 30, 1899. The defendant was engaged in the manufacture of furnaces, and in the course thereof it became necessary to have parts which came from the foundry cleansed of the sand which adhered thereto. This was accomplished by putting several hundred pounds of moldings at a time into what was known as a "tumbler," where they were revolved for a considerable length of time, with the result of having the sand worn off. It was in connection with one of these tumblers that the accident happened. The particular one involved was about six feet long, with a diameter of about equal length. It was made of iron, in the general shape of a large barrel. The head at either end was made with a flange, to which iron staves, corresponding to those of an ordinary barrel, were bolted. Several of these staves would be unbolted from the flange at each end, and taken off, to permit the moldings to be put in and taken out of the tumbler at the commencement and the end, respectively, of the cleansing process. The tumbler was revolved by means of appliances attached to it, and connected with the power. Plaintiff at and for some time prior to the date of the accident had an arrangement with defendant for cleaning these moldings by the process in question. By the terms of it, he was to receive 3½ cents per hundredweight for doing the work, and, as claimed by him, the defendant was to furnish and keep in order the machine. Having made this arrangement, he hired two men to help him. They were his employés, and paid by him, and not at all by the defendant. According to plaintiff's evidence, which, in view of the findings of the jury, we must assume to have been true, one of these men, named Felix, had the principal and immediate charge of the work. He looked after taking off and putting on the staves when the moldings were put in or taken out, plaintiff assisting him when necessary. Upon the occasion in question, while plaintiff was helping Felix take off some of the staves, preparatory to taking some moldings out one of the former became loosened and fell upon his foot, causing the accident in question. His witnesses gave evidence which permitted a jury to find that this falling of the stave was due to the fact that the thread had become worn from the bolt which fastened it at one end, thus allowing the nut to slip off, and the stave to become loose and fall upon the foot. There was a sharp dispute whether the accident did happen this way. Plaintiff claims that this defective

bolt was furnished by defendant in violation of its agreement to keep the machine in repair. Upon this point, again, there was a sharp dispute amongst the witnesses. It was claimed upon the part of the defendant that there were new bolts in the shop, where Felix, who had charge of the machine, could obtain them. The latter and some other witnesses, upon the other hand, insisted that the defendant objected to the use of too many new bolts, and that he was compelled, when a bolt became worn, to select from others which had been used one which was simply less worn, to fill the place; that he was accustomed at various times to make old bolts fit for use by turning a new thread upon them. There was sufficient evidence to sustain the findings, involved in the verdict of the jury, that the defendant made the agreement claimed and failed to keep it, and we pass to the consideration of the contributory negligence or assumption of risks to be imputed to plaintiff.

It will be noted that the arrangement between defendant and plaintiff was somewhat different from the ordinary relation established between employer and employé. The plaintiff was, to some extent, an independent contractor. He relies almost entirely upon the specific agreement by defendant to look after the machine as a basis of his claim of negligence. The specific agreement is placed in the stead of the ordinary liability from master to employé to furnish suitable machinery. The query might arise whether defendant's alleged agreement would carry with the failure to observe it a liability for personal injuries. It might be urged that the agreement to provide machinery simply had reference to enabling plaintiff to perform his work, and that the only liability for a failure to comply would be liability for damages in his undertaking. This question, however, has not been presented, and we need not consider it. The case was tried below, and has been presented to our attention, simply and solely as an ordinary one of negligence, in which the questions have been tried whether the defendant was guilty of negligence, and whether plaintiff was free from contributory negligence. The failure of the defendant to furnish a proper machine, as found by the jury, has been treated as ordinary negligence, and we shall consider plaintiff's situation upon the theory already adopted in the action. It was, in effect, held and charged by the learned trial justice that if the plaintiff knew or ought to have known of the defective bolt, and appreciated or ought to have appreciated the results liable to flow therefrom, he could not recover. He held, however, that upon all of the evidence this was a question of fact for the jury. We think that, so far as plaintiff's personal knowledge was concerned, this disposition was correct. There was testimony showing that plaintiff was accustomed to help his man Felix bolt the staves to the flanges, and that he was more or less around the tumbler. He denied absolutely and unqualifiedly the possession of any knowledge which would tell him that the bolt in question was defective. While there may be apparent improbabilities in his version, we feel unwilling to hold that he is to be charged, as matter of law, with personal knowledge of the conditions which are said to have existed. His position in the case, however, is not, in our judgment,

to be measured simply by his personal knowledge and observation. Having made with the defendant a contract which involved its supplying and keeping in order the machine, he operated the same through a man who was concededly his employé. He dealt with the defendant in its operation and repair through such employé. As claimed by him, instead of putting on and taking off the staves himself, he largely did it through this agent. He decided through this man whether the bolts supplied by defendant were sufficient and should be used or not. In our opinion, he is to be charged with the knowledge and conduct of his employé, through whom he thus acted. Perhaps the force of this conclusion may be made more apparent by assuming to have existed in the machine a much more aggravated and serious defect than is claimed. The principle will be the same, but the illustration may be useful. Let us suppose that upon the occasion in question one end of a stave had become so loosened as to make it perfectly manifest that it would, in the operation of the machine, fly off and injure any person working there. If, under such circumstances, plaintiff's man in charge had accepted the machine from the defendant, and put it in operation, calling plaintiff to assist him, and either had been injured, we think it will almost be conceded that a recovery could not have been had. It is not an unfamiliar rule that principals are to be charged with the knowledge and responsibilities acquired and incurred by their agents while acting in the course of their employment. We do not regard it as a departure from well-settled general principles to hold that a principal who is engaged in managing a piece of machinery through an agent and employé shall be charged with the knowledge and observation of his employé, and be bound by the latter's assumption of any risks incidental to the use of the appliance. Upon the other hand, it may be regarded as quite well settled that the contributory negligence of an agent will bar a recovery by his principal for the negligence of a third party. Dyer v. Railway Co., 71 N. Y. 228; Lewis v. Railroad Co., 162 N. Y. 52, 66, 56 N. E. 548; Delaney v. Railroad Co., 13 App. Div. 114, 43 N. Y. Supp. 225; Wooster v. Railway Co., 72 Hun, 197, 25 N. Y. Supp. 378.

These views bring us to the consideration of the question whether plaintiff's employé Felix is, as matter of law, to be charged with knowledge of the condition of the bolts, and with appreciation of the results which would probably follow the wearing out of the thread. We do not find much difficulty in answering this in the affirmative. For months Felix had been at work around the tumbler. Plaintiff, by his evidence, has emphasized the theory that he had charge of putting on and taking off the staves and adjusting the bolts. This operation had been repeated by him two or more times each day for months. According to defendant's theory, he had had opportunity to replace bolts which became worn with new ones which were kept on hand. According to plaintiff's theory, he had been accustomed to replace worn-out bolts with others less worn, and frequently had been compelled to turn new threads upon bolts. He had complained to the defendant's employés about the lack of proper and sufficient bolts. His work in adjusting the same compelled him to observe

their condition.   We think that, under such circumstances, it is not at all a strained conclusion that he knew more about the condition of the bolts than anybody else, including the defendant's employés. Knowing the condition, and observing, if it existed, that the thread had been worn off from a bolt, it required no very expert knowledge to foresee that four or five thousand pounds of iron being revolved in the tumbler was liable to force off the head of the bolt, and cause a stave weighing between one and two hundred pounds to drop off. This involved a very simple process of reasoning, which was well within the mental capacity and experience of the man.   We think, therefore, that it must be imputed to plaintiff that through his agent he knew of the condition of the bolt complained of, and ought to have foreseen the probability of the accident which it is said happened. Under the circumstances in this case, we do not think that there was anything in the alleged conversations of Felix with the defendant's employés about supplying more and newer bolts which relieves plaintiff from the assumption of the risks incident to the use of the defective ones.   The judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide event, upon questions of law only; the facts having been examined, and no error found therein.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event, upon questions of law only; the facts having been examined, and no error found therein.   All concur.